[No. B004042. Second Dist., Div. Four. July 12, 1984.]

CONSUELO HERRERA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SCHILLER W. LISNEK et al., Real Parties in Interest.

**COUNSEL**

Erwin Sobel and David P. Koppelman for Petitioner.

No appearance for Respondent.

Sam Schermer and John D. Mickus for Real Parties in Interest.

**OPINION**

**WOODS, P. J.**—By petition for writ of mandate plaintiff Consuelo Herrera seeks vacation of an order by respondent superior court which denied her motion for leave to amend her complaint and granted the motion to compel arbitration of defendants/real parties in interest Schiller W. Lisnek and S. W. Lisnek, D.P.M., Inc.

Plaintiff contends that (1) there was no legal basis for denying leave to amend her complaint for medical malpractice to add causes of action for certain intentional torts, and (2) the amended complaint is not subject to arbitration because the arbitration provisions of Code of Civil Procedure section 1295 apply only to negligently rendered medical services and not to intentional torts.

We hold that the trial court did erroneously deny plaintiff's motion to amend the complaint. We also conclude that the entire controversy between plaintiff and defendants is subject to arbitration.

In October of 1982, plaintiff filed a complaint for damages against defendants and 10 Doe defendants. The first cause of action was for medical malpractice. It alleged that after Mrs. Herrera placed herself under defendants' care, they misdiagnosed plaintiff's condition, resulting in improperly performed surgery which caused permanent injury to plaintiff's left foot. The second cause of action, for negligent infliction of emotional distress, was based on the same basic facts.

Defendants answered the complaint and alleged as a fifth affirmative defense that plaintiff's action could not proceed because it was subject to arbitration as provided in a written agreement. They prayed that the action be stayed and determined by arbitration.

On December 3, 1983, plaintiff sought to add six more causes of action to her complaint, on the basis that "[s]ubsequent to the filing of the suit, information has come to light which indicates that Dr. Lisnek did not perform the surgery he had claimed to have performed and that he committed acts against the plaintiff which amounted to an assault and battery." The proposed additional causes of action were: third, fraud and deceit in falsely

telling plaintiff that surgery was needed, that a particularly expensive surgery was necessary, and that specific diagnostic tests had been performed in the evaluation process; fourth, negligent misrepresentation of the facts as stated in the third cause of action; fifth, suppression of the fact that defendants actually performed a much less expensive surgery but charged plaintiff for the more expensive surgery; sixth, assault and battery arising from the performance of the operation without informed consent; seventh, intentional infliction of emotional distress; and eighth, unjust enrichment based on the difference in cost between the surgery which was performed and the surgery which was billed.

On December 7, 1983, defendants filed a petition for an order requiring plaintiff to arbitrate the controversy and a motion for a stay of action. Defendants argued that since all the claims in the original and the first amended complaint were based upon improper treatment, they were all subject to arbitration, pursuant to the arbitration agreement which was attached to an exhibit.

Defendants filed on the same date points and authorities in opposition to the motion to amend, in which they argued that the amended complaint was no more appropriate than the original complaint, since plaintiff should have proceeded in accordance with the arbitration agreement without the necessity for litigation. Defendants attached a declaration by Schiller W. Lisnek, D.P.J., which indicated that before plaintiff signed the arbitration agreement her daughter translated it into Spanish and explained it to her, as shown by the daughter's signature on the arbitration agreement under plaintiff's signature. Defendants' counsel also filed a declaration that he had written to plaintiff's counsel demanding arbitration and received no response.

Plaintiff filed supplemental points and authorities, arguing that defendants had shown no reason why the complaint should not be amended, as the amended complaint added several intentional torts which were not subject to arbitration. Plaintiff further contended that the arbitration agreement was unenforceable as a contract of adhesion and that it would further no interest to sever and send to arbitration the issues which were subject to arbitration as the parties would be forced to litigate simultaneously two separate actions concerning the same factual background. Plaintiff did not file any declaration contradicting Dr. Lisnek's declaration as to the signing of the arbitration agreement.

Defendants filed a reply in support of their motions, contending inter alia that severance could be appropriate.

On January 6, 1984, the trial court denied plaintiff's motion to file a first amended complaint and granted defendants' petition for an order requiring plaintiff to arbitrate and to stay the action and to compel arbitration.

Plaintiff filed the instant petition for writ of mandate. We issued an alternative writ and ordered a stay.

## I

Plaintiff contends that it was an abuse of discretion to deny her motion to file an amended complaint. We agree.

The power to permit amendments is interpreted very liberally as long as the plaintiff does not attempt "to state facts which give rise to a wholly distinct and different legal obligation against the defendant." (*Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 19-20 [108 P.2d 906, 135 A.L.R. 318].) "Great liberality is indulged in matters of amendment to the end that lawsuits may be determined upon their merits." (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 751 [299 P.2d 257].) "A change of theory as to the basis of recovery or as to the measure of damages is not a change of cause of action or the substitution of a new and different action for the original." (*Wells* v. *Lloyd IV* (1936) 6 Cal.2d 70, 88 [56 P.2d 517].)

Since the causes of action in the amended complaint were different legal theories arising from the same basic facts, the alleged improper treatment of plaintiff's foot, the trial court erred in refusing to allow the complaint to be amended.

## II

A more difficult issue is presented by plaintiff's argument that the amended complaint is not subject to arbitration because Code of Civil Procedure section 1295 contemplates arbitration only of doctors' negligent acts and not their intentional torts.

Section 1295 is part of the Medical Injury Compensation Reform Act (MICRA) which was enacted at an extraordinary session in 1975 to deal with rising medical malpractice insurance premiums due to perceived dramatic increases in claims and judgment awards. (Note, *Torts; Medical Malpractice* (1976) 7 Pacific L.J. 544, 545; see Novick, *Medical Malpractice: Arbitrating Disputes* (Mar. 1979) 2 L.A. Law. 34, 37.) A legislative report had indicated that "[t]he controversy surrounding malpractice litigation has prompted many to advocate the resolution of malpractice claims through an extra-judicial procedure. Frequent suggestions are that claims be resolved through arbitration . . . ." (Preliminary Rep., Cal. Assem. Select Committee on Medical Malpractice (June 1974) at p. 57.) In an apparent attempt to encourage such arbitration, the Legislature enacted section 1295, which reads in pertinent part: "(a) *Any contract for medical services which con-*

*tains a provision for arbitration of any dispute as to professional negligence* of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: '*It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration* as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'

"(b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type:

"'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.'

"(c) Once signed, such contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"(e) Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b) and (c) of this section.

". . . . . . . . . . . . . . . . . . . . . . . . .

"(g) For the purposes of this section:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(2) '*Professional negligence*' *means a negligent act or omission to act by a health care provider in the rendering of professional services,* which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Italics added.)

It should be noted that section 1295, subdivision (a), specifies the language to be used in an arbitration provision designed for "any dispute as to professional negligence," and defines the term "professional negligence" in subdivision (g)(2) as a negligent act or omission which proximately causes injury or wrongful death. Yet, the specific language of the required arbitration provision goes beyond negligence. A patient who signs an arbitration provision with that language is agreeing to arbitrate "any dispute as to medical malpractice, that is as to whether any medical services rendered under his contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered . . . ." The arbitration provision's own definition of malpractice obviously includes more than negligence. ■ Moreover, it is settled law that a malpractice action can include theories other than negligence, such as battery (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 239 [104 Cal.Rptr. 505, 502 P.2d 1]); breach of contract (*Depenbrok* v. *Kaiser Foundation Health Plan, Inc.* (1978) 79 Cal.App.3d 167, 171 [144 Cal.Rptr. 724]); and deceit (*Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212, 233-234 [36 Cal.Rptr. 537]).

■ Plaintiff signed an arbitration agreement containing exactly the language in section 1295, subdivision (a). Although she thereby agreed to arbitrate any dispute arising from improper medical services, she argues that the causes of action for intentional torts are not governed by section 1295 because of the beginning language in section 1295, subdivision (a) that "[a]ny contract for medical services which contains a provision for arbitration of any dispute as to *professional negligence*" shall have the required language. (Italics added.) The parties agree that no case has previously decided this issue.

In support of her interpretation, plaintiff relies on the Pacific Law Journal article cited previously. That article states: "From the outset, it should be noted that this portion of the MICRA [Medical Injury Compensation Reform Act] applies . . . *only* to actions for 'professional negligence.' . . . Apparently, because of the scope of this definition, an action brought under a legal theory *other* than negligence will *not* be regulated by this part of the MICRA—for instance, an action for battery on the grounds of a lack of 'informed consent.'" (Note, *Torts*; *Medical Malpractice, op. cit. supra,* 7 Pacific L.J. at pp. 545-546.)

We disagree with the article's limitation on possible legal theories under the statute. Indeed, the article itself impliedly recognized a problem with its interpretation as it states: "It is perhaps worthy of note that this section purportedly regulates only those contracts for the arbitration of *professional negligence,* yet the mandatory clauses clearly contain language to cover

other theories of recovery." (Note, *Torts*; *Medical Malpractice, op. cit. supra,* 7 Pacific L.J. at p. 551.)

As we read section 1295, the language about disputes regarding professional negligence, and definition of professional negligence, are designed to set the threshold of the type of action in which the arbitration provision will be used. That type of action was present here, as plaintiff has sued defendant in negligence. However, the language which the Legislature specified must be included in the arbitration provision shows that the Legislature intended arbitration of disputes over medical services to extend beyond negligence. Plaintiff's interpretation of the statute would render meaningless the definition of malpractice given in the arbitration provision, contrary to the rule of statutory interpretation that significance should be given to each word of a statute. (*Weber* v. *County of Santa Barbara* (1940) 15 Cal.2d 82, 86 [98 P.2d 492]; 58 Cal.Jur.3d, Statutes, § 105, p. 479.)

We are aware that the expression "professional negligence" and its definition were also added by MICRA to several other provisions, including Civil Code section 3333.1, subdivision (a) (allowing a defendant to elect to introduce evidence of benefits and premiums payable to the plaintiff in actions for professional negligence); Civil Code section 3333.2 (permitting a plaintiff to recover up to $250,000 in noneconomic losses in actions for professional negligence); and Business and Professions Code section 6146 (placing certain restrictions on attorney's contingency fee contracts in actions for professional negligence). Moreover, Code of Civil Procedure section 340.5 was amended to shorten the statute of limitations in actions based upon professional negligence, again utilizing the same definition of professional negligence. (See Note, *Torts*; *Medical Malpractice, op. cit. supra,* 7 Pacific L.J. at pp. 546-550.)

While we recognize the apparent importance of the term "professional negligence," we nonetheless believe that section 1295 was not intended to be limited only to negligence actions, otherwise the Legislature would not have included a definition of malpractice in the waiver form which covers more than negligence.

Plaintiff also contends that the language of section 1295 dealing with what is required in the arbitration provision is general language which follows the more specific earlier statement that section 1295 applies only to cases involving professional negligence. Therefore, argues plaintiff, the doctrine of *"ejusdem generis"* applies, under which "it is clear at once that the general language relied upon by [defendants] only includes those actions referred to in the specific language referred to hereinabove; specifically, actions for negligence."

Black's Law Dictionary (rev. 4th ed. 1968) page 608 explains that the doctrine of "*ejusdem generis*" means that "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Plaintiff cites us to *Scally* v. *Pacific Gas and Electric Co.* (1972) 23 Cal.App.3d 806, 818-819 [100 Cal.Rptr. 501], where the court found that the words "other" or "any other" following an enumeration of particular classes of items in a statute should be read to include only items of like character to the enumerated item. We fail to see any application of this principle of statutory construction to the statute in question here.

Plaintiff further argues that an arbitration award arising from any intentional tort would have to be vacated under Code of Civil Procedure section 1286.2, which provides that an arbitration award shall be vacated if the court finds that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. . . ." We see no basis for contending that the arbitrators would exceed their powers in making an award based on an intentional tort.

In *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714 [131 Cal.Rptr. 882, 552 P.2d 1178], our Supreme Court recognized that "arbitration has become a proper and usual means of resolving civil disputes, including disputes relating to medical malpractice." Our decision that the arbitration provision of section 1295 is not limited to negligence action is in keeping with the "public policy of this state to favor arbitration over litigation as a means of settling disputes because it is expeditious, avoids the delays of litigations, and relieves court congestion." (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 355 [133 Cal.Rptr. 775]; *Hawkins* v. *Superior Court* (1979) 89 Cal.App.3d 413, 416 [152 Cal.Rptr. 491].)

Finally, we note that plaintiff has not contended before this court that grounds exist for revoking the arbitration agreement. (Code Civ. Proc., § 1281.) There is no argument or evidence presented that the arbitration agreement is invalid as a contract of adhesion (see *Beynon* v. *Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 704-706 [161 Cal.Rptr. 146]; *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at pp. 356-361), or that plaintiff was coerced or did not understand the agreement (see *Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 755-757 [163 Cal.Rptr. 223]). The record shows that the arbitration agreement was a separate, one-page form, containing the language required by section 1295, subdivision (b), and signed and dated by plaintiff, a witness, and Dr. Lisnek. Dolores

Casso signed and dated the agreement under a line reading, "I have translated and explained the above contract to the patient." Plaintiff did not file an affidavit contradicting Dr. Lisnek's affidavit that before plaintiff signed her name "her daughter Dolores Casas [*sic*], who had accompanied her, translated the said document and explained it to her, in Spanish." Plaintiff's sole contention regarding the arbitration provision is that intentional torts are not subject to arbitration. We have concluded otherwise.

Let a peremptory writ of mandate issue directing respondent to issue a new order permitting the amended complaint to be filed, staying the proceedings and ordering the entire action to arbitration.

Kingsley, J., and McClosky, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 13, 1984. Bird, C. J., was of the opinion that the application should be granted.