[Civ. No. 28225. Fourth Dist., Div. One. Dec. 12, 1984.]

DIANA S. BAKER, Plaintiff and Respondent, v.
S. PAUL SADICK, Defendant and Appellant.

COUNSEL

Donald B. Caffray, Ball, Hunt, Hart, Brown & Baerwitz, Clarence S. Hunt and Joseph D. Mullender, Jr., for Defendant and Appellant.

Daniel T. Broderick III for Plaintiff and Respondent.

OPINION

**STANIFORTH, Acting P. J.**—Dr. S. Paul Sadick appeals a judgment confirming an award of punitive damages following arbitration of Diana S. Baker's medical malpractice claims against Sadick. The sole question presented for this court's determination is whether an agreement providing for arbitration of "any" issue of medical malpractice authorizes the arbitrator to award punitive damages in arbitration of a medical malpractice claim. We affirm the award.

## FACTS

The facts giving rise to Baker's medical malpractice claim are essentially not in dispute. In February 1980, Baker employed Sadick to perform breast reduction surgery. Upon admission to Mt. Helix Hospital, Baker signed an arbitration agreement.

Sadick performed the breast reduction surgery upon Baker in March 1980. Immediately following surgery, Baker began suffering serious post-surgery infection. Baker was ineffectually treated and released from the hospital.

The infections became so serious that tissue necrosis resulted and scarring of Baker's breasts required extensive, corrective plastic surgery.

In August 1980, Baker's attorney notified Sadick of her intention to pursue a medical malpractice claim pursuant to the arbitration agreement. Without objection by either party, the issues of liability for malpractice and compensatory and punitive damages were submitted. In May 1982, following arbitration by a panel of three arbitrators, Sadick was ordered to pay Baker the following sums:

"1. For medical expenses incurred to date: $8,769.11

"2. For future medical expenses: $1,200.00

"3. Compensatory damages: $275,000.00

"4. Punitive damages: $300,000.00

"5. Attorney's fees: $100,163.40

"6. For costs of suit upon proper application."

On petition by Baker for confirmation of the arbitration award, the superior court corrected the award for compensatory damages, pursuant to Civil Code section 3333.2,[1] reducing it to $250,000. The trial court, however, rejected Sadick's contention the arbitrators were without power or authority to award punitive damages. The court ruled the language of the arbitration agreement was susceptible to interpretation to include claims or issues relating to punitive damages. To construe the agreement otherwise would "[give] a license to a doctor to do the kind of things as to which punitive damages are intended to act as a deterrent to the community . . . ."

DISCUSSION

I

The arbitration agreement at issue provides in pertinent part: "It is understood that *any dispute as to medical malpractice, that is as to whether any*

---

[1]Civil Code section 3333.2 provides: "(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

"(b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000).

"(c) For the purpose of this section:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

*medical services* rendered under this Contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, *will be determined by submission to arbitration* as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this Contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.

"*. . . . . . . . . . . . . . . . . . . . . .*

"Whenever the word ARBITRATION is used, it means the settlement of disputes by negotiation and NOT by law suit.

"*. . . . . . . . . . . . . . . . . . . . . .*

"NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE *ANY ISSUE OF MEDICAL MALPRACTICE DECIDED* BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE FIRST PARAGRAPH OF THIS CONTRACT." (Italics added.)

■ Sadick contends the arbitration agreement does not authorize an award of punitive damages because the agreement was tailored after Code of Civil Procedure section 1295 which "only permits the parties to agree to arbitrate claims of professional negligence." He argues "professional negligence" claims do not include intentional tort claims. ■ Sadick further contends Civil Code section 3294, the statutory basis for punitive damages, does not authorize punitive damages in arbitration proceedings. Sadick's contentions necessitate consideration of the specific language of the arbitration agreement at issue here against the backdrop of the overall nature of arbitration agreements, the scope of an arbitrator's powers, the public policy favoring arbitration and the policy considerations attending punitive damage awards.

■ An agreement to arbitrate is a contract and an arbitrator may consider only such disputes as are covered by the arbitration agreement. (*Mansdorf* v. *California Physicians' Service, Inc.* (1978) 87 Cal.App.3d 412 [151 Cal.Rptr. 388]; *Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1 [129 Cal.Rptr. 489].) ■ Although awards may be vacated if the arbitrator has exceeded his power, any ambiguities in the scope of arbitration are resolved in favor of coverage. (*Taylor* v. *Crane* (1979) 24 Cal.3d 442, 450 [155 Cal.Rptr. 695, 595 P.2d 129].) ■ Because arbitration is a favored method of dispute resolution, arbitration agreements should be liberally con-

strued. (Cf., *Weeks* v. *Crow* (1980) 113 Cal.App.3d 350, 353 [169 Cal.Rptr. 830].)

■ In determining whether a particular dispute falls within the purview of an arbitration agreement, effect must be given to the parties' intentions in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made. (*Weeks* v. *Crow, supra,* 113 Cal.App.3d 350, 353.) ■ "There is a strong judicial policy in this state favoring arbitration over litigation as a means of settling disputes, including disputes arising out of medical malpractice claims, because arbitration is less expensive and more expeditious than litigation and, moreover, relieves court conjestion. (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 355-356 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].)" (*Hawkins* v. *Superior Court* (1979) 89 Cal.App.3d 413, 416 [152 Cal.Rptr. 491].)

■ The arbitration agreement at issue here expressly provides, without limitation, "*any dispute* as to medical malpractice" (italics added) will be determined by submission to arbitration. By this agreement it may be reasonably argued the parties agreed to relinquish their respective constitutional rights to have *any* medical malpractice claim decided in a court of law before a jury and instead accepted use of arbitration.

## II

Sadick, however, contends the agreement does not extend to disputes involving punitive damages because the agreement is tailored after Code of Civil Procedure section 1295[2] and that section applies only to disputes involving "professional negligence."

---

[2]Code of Civil Procedure section 1295 provides in relevant part: "(a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'

"(b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type:

" 'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.' "

Focusing upon the statutory definition of "professional negligence," Sadick contends section 1295 does not encompass intentional tort claims which would support an award of punitive damages. He contends "section 1295 is a legislative declaration" which limits arbitration of "any dispute which may arise" to "a negligent act or omission to act." Code of Civil Procedure section 1295, subdivision (g)(2), provides: "(g) For the purposes of this section:

". . . . . . . . . . . . . . . . . . . . . . .

"(2) *'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which* act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

### III

Does this language compel arbitration of claims of damages for fraud, wilful malicious torts, batteries occurring in the course of or in connection with medical treatment when such arbitration is requested by either party? Punitive damages are recoverable in medical malpractice actions at law where claims are asserted on intentional tort theories of liability. (*Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623 [178 Cal.Rptr. 167]; *Blegen* v. *Superior Court* (1981) 125 Cal.App.3d 959 [178 Cal.Rptr. 470]; *Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891 [99 Cal.Rptr. 706]; see also *Herrera* v. *Superior Court* (1984) 158 Cal.App.3d 255 [204 Cal.Rptr. 553], hg. den.)

Baker's medical malpractice claim was bottomed on intentional tort principles. The surgery was unnecessary; she was fraudulently induced to submit to surgery; Sadick falsified Baker's medical records; Sadick's surgical techniques were negligent; Baker received negligent post-operative management; and her consent to surgery was uninformed. Clearly, the claim Sadick performed unnecessary surgery upon Baker and that he fraudulently induced her consent to the surgery and failed to administer any post-operative treatment asserts wilful wrongs—more than mere negligence—appropriate factual bases for recovering punitive damages.

The agreement in question is a standard form arbitration agreement. The general rule respecting standard form agreements is any ambiguities are to be resolved against the draftsman. (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 883 [27 Cal.Rptr. 172, 377 P.2d 284].) The rationale of such a rule rests upon consideration a provision which limits the liabilities

of the stronger party will not be enforced absent plain and clear notification of the terms of the agreement and an understanding consent. (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 357 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) If the arbitration agreement presents ambiguities, we must construe the agreement in favor of Baker.

■■■ The provisions of the scrutinized arbitration agreement defines disputes as to medical malpractice to include medical services which were "unnecessary or unauthorized or were improperly, negligently or incompetently rendered . . . ." This definition could be construed to embrace more than mere negligence when considered in conjunction with the language of the agreement and section 1295 that "*any* dispute as to medical malpractice" (italics added) is to be submitted to arbitration.

However, from the face of the statute and the agreement, it appears: Neither the statute nor the agreement specifically mention or authorize a claim for punitive damages. In fact, the definition of "professional negligence" appears to limit the recovery to a "negligent act or omission." This latter language, at minimum contrasts with the broad "any issue" language of section 1295, subdivision (a), and creates an uncertainty, an ambiguity. Here, it is not the weaker party, Baker, who seeks to limit the arbitration agreement. Rather, it is Sadick who seeks to escape the broad embrace of the general terms of the arbitration agreement. In this context we construe the language favorable to Baker's (the nondrafter's) position.

This is not a case where the doctor alone insists upon submitting the patient's claim for punitive damages to arbitration. Whether such request is supported by the ambiguous language of this agreement is not before us. In this case it is the patient as well as the doctor who has submitted this intentional wrong, fraud, punitive damage claim to the arbitrators. Having consented to this submission, the doctor may not now assert a lack of authority in the arbitrators to award punitive damages.

## IV

■■■ Sadick next contends punitive damages cannot be recovered because Civil Code section 3333.2 "limits the amount of general compensatory damages in medical malpractice cases based on professional negligence to $250,000."[3] It is argued since Civil Code section 3333.2 applies only to a "negligence case" and since the superior court here corrected the arbitrators' award by reducing it to $250,000, an award of punitive damages is precluded. Sadick's argument is simply, "[p]unitive damages may not be

---

[3]See footnote 1, *ante.*

awarded for negligence." What was submitted here was a claim based upon fraud, wilful neglect, malicious acts, etc., not simple negligence.

Civil Code section 3333.2 does not preclude an award of punitive damages. ▪▪ In a court proceeding, *both* compensatory and general damages for negligence as well as punitive damages may be recovered in medical malpractice actions upon proof the defendant is "guilty of malice, either 'express or implied'." (*Ebaugh* v. *Rabkin, supra,* 22 Cal.App.3d 891, 895; see also *Nelson* v. *Gaunt, supra,* 125 Cal.App.3d 623, cf., *Blegen* v. *Superior Court, supra,* 125 Cal.App.3d 959.) Malice in fact is established by showing the defendant's conduct was wilful, intentional and done in reckless disregard of the probable consequences of those acts. (*Rosener* v. *Sears, Roebuck & Co.* (1980) 110 Cal.App.3d 740, 748 [168 Cal.Rptr. 237].) ▪▪ We conclude punitive damages which may be asserted in a court of law may also be asserted under the arbitration clause here under scrutiny where the issue is submitted by the patient or as here with the consent of both parties.

## V

▪▪ Sadick next contends Civil Code section 3294, the statutory basis for punitive damages, does not authorize such damages in arbitration proceedings because a proceeding in arbitration is not an "action." This contention is without merit. Civil Code section 3294, subdivision (a), provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

Sadick then refers us to Code of Civil Procedure sections 20 through 23. Those sections provide: "Judicial remedies are such as are administered by the Courts of justice, or by judicial officers empowered for that purpose by the Constitution and statutes of this State." (§ 20.)

"These remedies are divided into two classes:

"1. Actions; and,

"2. Special proceedings." (§ 21.)

"An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (§ 22.)

"Every other remedy is a special proceeding." (§ 23.)

Sadick claims *McRae v. Superior Court* (1963) 221 Cal.App.2d 166 [34 Cal.Rptr. 346, 98 A.L.R.2d 1239], holds, and subsequent legislative amendments establish, arbitration proceedings are not actions within the meaning of section 3294. *McRae* holds an arbitration proceeding is not an "action" for purposes of ordering depositions under Code of Civil Procedure section 2016. Following the decision of *McRae,* the Legislature enacted Code of Civil Procedure sections 1283, 1283.05 and 1283.1 establishing procedures for discovery in arbitration proceedings. Thus, Sadick argues since the Legislature has not specifically designated arbitration proceedings as "actions," punitive damages cannot, therefore, be awarded in arbitration.

This argument misses the purposes of arbitration and obscures the limited significance of *McRae* and the discovery in arbitration provisions enacted by the Legislature. One of the primary objectives of arbitration is to effect expeditious and economical solution of disputes. These objectives are accomplished in part by minimizing the formalities and trappings in arbitration which are adherent in litigation. The express *McRae* holding is that judicial interference in the form of ordering depositions in arbitration proceedings is incompatible with the strong public policy in favor of settling arbitrations speedily with a minimum of court interference. *(McRae v. Superior Court, supra,* 221 Cal.App.2d 166, 170.) From this rationale it does not follow that a proceeding in arbitration which is not an action for purposes of discovery is not an action for purposes of Civil Code section 3294.

To conclude arbitration is not an action for purposes of Civil Code section 3294 would be in disregard of another purpose of arbitration. Arbitration serves as a *substitute* for proceedings in court. As a substitute, arbitration would not be encouraged by a decision which effectively holds a claim which may otherwise be asserted in a court of law may not be asserted in arbitration.

## VI

 Sadick also claims the public policy favoring arbitration will be frustrated if arbitrators are permitted to award punitive damages. Sadick asserts punitive damages are a form of penalty reserved for imposition by the state. Therefore, he argues, contracts which provide for private penalties are unenforceable. It is further urged punitive damages awards made in civil actions are subject to judicial review and since arbitration awards including punitive damages are not reviewable, agreements to arbitrate will be discouraged.

The only California case found involving an arbitrator's award of punitive damages is *Trump* v. *Superior Court* (1981) 118 Cal.App.3d 411 [173 Cal.Rptr. 403].[4] That case, however, did not involve a private contract to arbitrate. The arbitration there involved was mandatory under Code of Civil Procedure sections 1141.10 et seq., which require arbitration in certain cases, even where there is no agreement to arbitrate. Under section 1141.10, either party is entitled to a trial de novo if dissatisfied with the award.

Courts historically have adopted a restrictive attitude towards awards of punitive damages. Such awards are generally disfavored. (See *Rosener* v. *Sears, Roebuck & Co., supra,* 110 Cal.App.3d 740, 750, and cases cited therein.) However, punitive damages, under appropriate circumstances, are awarded because they are considered to serve the dual purpose of punishing and hopefully deterring the wrongdoer from engaging in similar egregious conduct in the future and deterring others as well.

Recently, one commentator observed even though arbitration is a private procedure for resolving medical malpractice disputes and punitive damage awards in arbitration will not likely serve as warnings or deterrents to others, this fact is an insufficient basis for excluding intentional tort claims from arbitration. "If punitive damages actually serve to deter future conduct, the defendant is not likely to repeat his wrongful acts. It should not make a difference how many individuals are deterred, so long as the defendant himself is inhibited from engaging in the same conduct in the future." (Comment, *Awarding Punitive Damages in Medical Malpractice Arbitration* (1984) 20 Cal. Western L.Rev. 312, 330.)

Sadick relies on *Garrity* v. *Lyle Stuart, Inc.* (1976) 40 N.Y.2d 354 [386 N.Y.S.2d 831, 353 N.E.2d 793, 83 A.L.R.3d 1024], to support his argument punitive damages should not be awarded in arbitration proceedings. In *Garrity,* plaintiff author sued defendant publisher for unpaid royalties and for punitive damages for malicious withholding of royalty payments. Pursuant to an arbitration clause in the royalty contract, the dispute was submitted to arbitration. The arbitrator awarded both compensatory and punitive damages. In a four-to-three decision, the New York Court of Appeals vacated the award of punitive damages, holding public policy forbids private

---

[4]There are cases, however, where the court has, pursuant to an arbitration agreement, ordered arbitration of claims asserted in a lawsuit which included a claim for punitive damages. In none of those cases was the court called upon to decide whether an award of punitive damages, if made, would be valid. (*Herrera* v. *Superior Court, supra,* 158 Cal.App.3d 255; *Pacific Inv. Co.* v. *Townsend, supra,* 58 Cal.App.3d 1; *Marcus* v. *Superior Court* (1977) 75 Cal.App.3d 204 [141 Cal.Rptr. 890]; *Parr* v. *Superior Court* (1983) 139 Cal.App.3d 440 [188 Cal.Rptr. 801].)

punishment. The court also declared "[a]n arbitrator has no power to award punitive damages, e\ ⟩n if agreed upon by the parties [citations]." (386 N.Y.S.2d 831, 832.)

In discussing punitive damages in commercial arbitration settings, one commentator observed the underlying premise of the *Garrity* holding is the action involved was in contract and in such actions punitive damages typically are not available. (Hackett, *Punitive Damages in Arbitration: The Search for a Workable Rule* (1978) 63 Cornell L.Rev. 272.) Another commentator notes, "the relationship of a tortious injury to the contractual theory of liability may confuse the theoretical basis for [arbitration], including the arbitrability question." (Henderson, *Contractual Problems in the Enforcement of Agreements to Arbitrate Medical Malpractice* (1972) 58 Va. L.Rev. 947, 975; fn. omitted.)

■ Sadick concedes Baker's claim does not involve breach of contract. He however urges since the power of arbitrators to act is derived from the arbitration agreement, the agreement is unenforceable if construed to provide for payment of a penalty. This argument demonstrates the confusion predicted by the Henderson article. ■ A medical malpractice claim rests in tort and punitive damages may be recovered in medical malpractice cases depending upon the facts of the particular case. ■ It strains legal imagination to conclude an agreement to substitute arbitration for litigation results ipso facto in forbearance of a claim which would support an award of punitive damages.

Another significant reason supports our reluctance to follow *Garrity*. The Legislature of New York, unlike the California Legislature, has not responded to the medical malpractice crisis by enacting legislation encouraging arbitration. (*Awarding Punitive Damages in Medical Malpractice Arbitration, supra,* 20 Cal. Western L.Rev. 312, 326.) Such legislation in California is substantial evidence of a public policy favoring arbitrated settlements of medical malpractice claims, to the extent authorized by an appropriate arbitration clause.

■ Finally, we are not persuaded by the argument if an arbitrator is permitted to award punitive damages in medical malpractice claims submitted to arbitration agreements to arbitrate will be discouraged because punitive damages awards are not reviewable. A holding punitive damages may be awarded in arbitration of a medical malpractice claim required to be submitted to arbitration by an arbitration agreement as broad as the one here involved does not divest the parties of their power to control the scope of arbitration by the terms of their agreement.

## Disposition

Based upon the language of this arbitration agreement, the rules requiring construction of ambiguous contracts against the drafter, and the fact that both parties here, not just the doctor, did in fact voluntarily submit the issue of punitive damages to the arbitrators, compel this conclusion: The judgment is affirmed.

Wiener, J., and Duffy, J.,* concurred.

A petition for a rehearing was denied January 2, 1985, and appellant's petition for a hearing by the Supreme Court was denied February 20, 1985. Lucas, J., was of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.