[No. B139794. Second Dist., Div. Four. Sept. 13, 2000.]

KENNETH NAKAMURA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
OLIVIA VILLEGAS ORONA et al., Real Parties in Interest.

**COUNSEL**

Vetch, Carlson, Grogan & Nelson, Gilbert A. Garcia and Timothy E. Kearns for Petitioners.

No appearance for Respondent.

Terrance Ponchak for Real Parties in Interest.

**OPINION**

**EPSTEIN, Acting P. J.**—In this case we hold that, under Civil Code section 3333.4,[1] the plaintiffs—an uninsured owner and the uninsured operator of a vehicle involved in a traffic accident—are barred from recovering noneconomic damages, but the limitation on recovery of noneconomic damages in that statute does not preclude recovery of punitive damages.

Section 3333.4, a part of the Personal Responsibility Act of 1996, was enacted by initiative (Prop. 213), adopted by the electorate at the 1996 General Election.[2] Subdivision (a) of the statute provides that "in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages" if the injured person was the owner of an uninsured vehicle involved in the accident or was the operator of the vehicle and cannot establish financial responsibility "as required by the financial responsibility laws of this state." Subdivision (c) of section 3333.4 is an exception for uninsured owners (but not nonowner operators) to recover

---

[1] All statutory references are to the Civil Code unless otherwise noted.

[2] Proposition 213 was enacted after the liability-creating events in this action; however, none of the parties has challenged its retroactive effect. Retroactive application of section 3333.4 is constitutional. (*Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972 [68 Cal.Rptr.2d 553].)

noneconomic damages if the uninsured owner "was injured by a motorist who at the time of the accident was operating his or her vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense. . . ."[3] Since the trial court correctly denied petitioner's motion to strike the claim for punitive damages, we shall deny the writ.

## FACTUAL AND PROCEDURAL SUMMARY

Petitioners Kenneth Nakamura (Nakamura) and Dai Ichi Motion Picture, Inc., (Dai Ichi) are defendants in a personal injury lawsuit brought by plaintiffs and real parties in interest, Olivia Villegas Orona (Orona) and Rene Danilo Vallejo (Vallejo). Defendants petitioned this court for a writ of mandate seeking to overturn the trial court's order denying their motion for summary adjudication on plaintiffs' claim for punitive damages.

The material facts are not in dispute. On February 15, 1996, plaintiffs and defendant Nakamura were involved in a traffic collision in which plaintiffs suffered personal injuries. Plaintiffs contend that Nakamura made an improper left turn, causing the collision. Plaintiffs were traveling together in a vehicle owned by Orona and operated by Vallejo. Plaintiffs concede that neither had the requisite insurance or proof of financial responsibility as required by section 3333.4.

As a result of the accident, defendant Nakamura was charged with driving under the influence of alcohol/drugs (Veh. Code, § 23152, subd. (a)); driving with a blood-alcohol level of .08 percent or more (Veh. Code, § 23152, subd. (b)); driving without a valid license (Veh. Code, § 12500, subd. (a)); and reckless driving (Veh. Code, § 23103, subd. (a)). At his arraignment in April 1996, Nakamura pleaded nolo contendere to a violation of 23103, subdivision (a), the reckless driving count. The court accepted the prosecutor's statement that the reckless driving count "involved" alcohol (that is, it was a "wet reckless"). The remaining charges, including the two counts under Vehicle Code section 23152, were dismissed. Nakamura's sentence was suspended, and he was placed on 36 months' probation with certain conditions, and ordered to pay monetary penalties and fines.

Plaintiffs filed their original complaint in municipal court on November 4, 1996. In addition to Nakamura, plaintiffs named Dai Ichi as a defendant, claiming that at the time of the accident, Nakamura was operating the

---

[3] In pertinent part, Vehicle Code section 23152 prohibits driving a vehicle under the influence of alcohol or drugs or with a blood-alcohol level of .08 percent or more. Vehicle Code section 23153 prohibits driving a vehicle and causing bodily injury while under the influence of alcohol or drugs or with a blood-alcohol level of .08 percent or more.

vehicle in the course of his employment with Dai Ichi and that Dai Ichi owned or partly owned the vehicle Nakamura was driving.[4]

Later, plaintiffs moved to amend the complaint to add a claim for punitive damages, and to transfer the case to superior court. The judge ordered the case transferred to superior court, but pursuant to local rules of coordination between superior and municipal courts in effect at the time, the matter remained assigned to the same department and judge. Plaintiffs filed a first amended complaint, which included a claim for punitive damages along with claims for negligence and personal injury. Defendants moved to strike the claim for punitive damages, arguing that such damages are within the nonpecuniary damages bar of section 3333.4. In opposition, plaintiffs argued: (1) since Nakamura was charged with driving under the influence of alcohol and pleaded nolo contendere to a "wet reckless," the drunk driving exception applied; (2) the statutory bar does not apply to punitive damages.

The court denied defendants' motion to strike, overriding its earlier ruling barring punitive damages. Ultimately, in October 1999, plaintiffs filed the operative second amended complaint for personal injury, negligence, "intentional tort" (i.e., intentional infliction of emotional distress) and punitive damages. Defendants moved for summary adjudication of issues, seeking to excise the claims for general and punitive damages pursuant to section 3333.4. The trial court denied defendants' motion for summary adjudication of issues. (The record provided to us does not state the trial court's basis for its ruling.)

Defendants then filed the instant petition for writ of mandate, contending the trial court erred in denying their motion for summary adjudication on the punitive damages claim. We issued an alternative writ, granted a temporary stay, and set the matter for oral argument. We requested supplemental briefing on three issues: (1) application of the doctrine of *ejusdem generis* to subdivision (a) of section 3333.4; (2) language in the ballot pamphlet concerning Proposition 213; and (3) the effect of case law construing section 3333.2, subdivisions (a) and (b) (part of the 1975 Medical Injury Compensation Reform Act (MICRA).) Less than two weeks before the date set for oral argument, the trial court vacated its previous order and *granted* defendants' motion for summary adjudication, thereby complying with our alternative writ. Subsequently, the trial court designated the matter as a limited

---

[4]It is not clear from the record before us whether Vallejo is still a plaintiff or if the parties have settled his claims. In their answer to the second amended complaint, defendants propounded an affirmative defense of settlement as to Vallejo's claims, and defendants' summary adjudication motion is directed solely to plaintiff Orona's claims. Both Orona and Vallejo, however, are named as real parties in interest in the petition for writ of mandate. To the extent Vallejo remains a plaintiff in this action, our ruling applies to his claims.

jurisdiction case under Code of Civil Procedure section 85 et seq.[5] It was apparent that the parties, and certainly the trial court, were acting on the assumption that we were about to hold the trial court erred in denying the motion for summary adjudication. We had come to question that result, and felt the matter should proceed to oral argument, and so notified the parties.[6]

We now conclude that the trial court ruled correctly in denying the summary adjudication motion and we deny defendants' application for extraordinary relief.

## DISCUSSION

■ The grant and denial of summary judgment or summary adjudication motions are subject to de novo review. (*Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1116 [78 Cal.Rptr.2d 478].) ■ In this case there are no disputed facts or conflicts in the evidence regarding defendants' affirmative defense based on section 3333.4; the petition is limited to questions about the interpretation of section 3333.4. These are purely issues of law to be decided by the court. (*Kurokawa v. Blum* (1988) 199 Cal.App.3d 976, 991 [245 Cal.Rptr. 463].)

## I

■ We first consider plaintiffs' claim that they are entitled to recover all damages, including punitive damages, because Nakamura was driving under the influence of alcohol when the accident occurred. According to plaintiffs, this triggers the "drunk driving" exception to the recovery limits in section 3333.4.

As we have discussed, section 3333.4, subdivision (a) (subdivision (a)) of the statute generally prohibits the recovery of noneconomic damages in an action arising out of the use or operation of a motor vehicle if the injured person is an uninsured driver or uninsured owner of the vehicle.

---

[5]In its order designating the matter as a limited jurisdiction case, the trial court explained that in the two months following our issuance of the alternative writ it was awaiting the submission of plaintiffs' return to the alternative writ. Because plaintiffs did not submit a return, the trial court "deduce[d] that plaintiffs have altered their position and have now adopted defendants' position."

[6]Ordinarily, we would dismiss the petition as moot if the trial court complies with the terms of the alternative writ. However, when a pending case involves a question of public interest that is likely to recur between the same parties or others, "the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal. 3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].) We find the issues in this case warrant our consideration. Further, in this case our failure to intervene would result in a miscarriage of justice, since the result would be inconsistent with the result we reach on the specified legal issue before the court.

Section 3333.4, subdivision (c) (subdivision (c)) provides a single exception: an injured uninsured owner of the vehicle may still recover noneconomic damages if the injury was caused by a defendant who operated a vehicle in violation of Vehicle Code section 23152 or 23153 and *"was convicted of that offense."* (Italics added.)

The language of subdivision (c) is clear and leaves nothing to construe. ▮ ▪ ▪ The defendant not only must have been driving under the influence when the accident occurred, he or she also must have been convicted of that crime (violation of Vehicle Code section 23152 or 23153) for the exception to apply.[7] ▮ "Where, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; 'no resort to extrinsic aids is necessary or proper.' [Citations.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119-1120 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

▮ It is undisputed that Nakamura was charged with driving under the influence of alcohol, but was not convicted of that crime. He was convicted of reckless driving. The framers of Proposition 213 could easily have excepted all operators who were, in fact, driving under the influence. They chose, instead, to require a conviction for violations of Vehicle Code section 23152 or 23153. We are not at liberty to alter the language they proposed and which the voters adopted. (*Jenkins v. County of Los Angeles* (1999) 74 Cal.App.4th 524, 531 [88 Cal.Rptr.2d 149]; *Yoshioka v. Superior Court, supra,* 58 Cal.App.4th 972, 980.)

Because Nakamura was not convicted of violating Vehicle Code section 23152 or 23153, the exception in subdivision (c) does not apply. Section 3333.4 bars both plaintiffs from recovering noneconomic damages in this lawsuit.

## II

We turn to whether punitive damages are within the damages limitations of subdivision (a). As we have seen, the statute prohibits uninsured motorists and owners from recovering *"non-economic* losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, *and other nonpecuniary damages . . . ."* (*Ibid.,* italics added.)

---

[7]The drunk driving exception in subdivision (c) affects only the injured uninsured *owner* of the vehicle described in subdivision (a)(2). An operator who cannot prove compliance with the financial responsibility laws described in subdivision (a)(3) and who is injured in a collision cannot recover noneconomic damages even if the at-fault driver is later convicted of drunk driving. (See *Quackenbush v. Superior Court* (1997) 60 Cal.App.4th 454, 460 [70 Cal.Rptr.2d 271], cert. den. (1998) 525 U.S. 826 [119 S.Ct. 73, 142 L.Ed.2d 57].)

■ Punitive damages do not compensate for loss. Their sole purpose is to punish and deter. (See *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 387 [202 Cal.Rptr. 204].) Although generally there must be some relationship between the amount of punitive and compensatory damages (see *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 918 [148 Cal.Rptr. 389, 582 P.2d 980]), "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." (*Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247, 266-267 [101 S.Ct. 2748, 2759, 69 L.Ed.2d 616].) ■ Thus, punitive damages do not fit neatly within any of the specific noneconomic losses enumerated in subdivision (a), each of which describes a basis for "subjective" compensatory damages.

In context with the rest of subdivision (a), "nonpecuniary" appears to describe any kind of subjective loss to an injured party, i.e., damages that are not objectively measurable by reference to a specific dollar loss. We do not examine the words of a statute in isolation. Our Supreme Court has admonished that to seek the meaning of section 3333.4 " 'is not simply to look up dictionary definitions and then stitch together the results. Rather, it is to discern the sense of the statute, and therefore its words, *in the legal and broader culture*. Obviously, a statute has no meaning apart from its words. Similarly its words have no meaning apart from the world in which they are spoken.' [Citation.]" (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433] [construing the phrase "use and operation" of a motor vehicle in § 3333.4].)

■ Where the words of a voter initiative are at least arguably ambiguous, we may look to various canons of statutory construction, compare the provision to the construction given other similar statutes, and examine ballot materials as aids to ascertaining the intent of the electorate. (*Hodges v. Superior Court, supra*, 21 Cal.4th at pp. 113-115.)

■ The most obvious applicable maxim of statutory construction in this case is *ejusdem generis*. That rule provides that when general words follow the enumeration of particular classes of persons or things in a statute, " 'the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' " (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d

676], cert. den. (1980) 447 U.S. 935 [100 S.Ct. 3038, 65 L.Ed.2d 1130], quoting *Scally v. Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501].)

In *Sears*, for example, the Supreme Court concluded that union picketing in front of a retailer's store could not be enjoined under Code of Civil Procedure section 527.3, which limits the equity jurisdiction of superior courts in labor disputes. The court rejected the retailer's contention that peaceful but trespassory picketing on private sidewalks could be enjoined under subdivision (e) of the statute, which provides that "[i]t is not the intent of this section . . . to permit conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity." Applying the doctrine of *ejusdem generis*, the court held that the reference in subdivision (e) to "conduct that is unlawful" was limited to conduct which "constitutes breach of the peace, disorderly conduct, the blocking of access or egress, or other 'similar unlawful activity,'" and that "[p]eaceful picketing on private sidewalks . . . is not conduct 'similar' to the listed acts." (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, supra,* 25 Cal.3d at pp. 330-331.)

Similarly, in *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1390-1391 [241 Cal.Rptr. 67, 743 P.2d 1323], the court applied the doctrine to decide whether a state agency was authorized to award punitive damages to employees victimized by an employer's discriminatory practices. The relevant statute, Government Code section 12970, subdivision (a), provided the agency could "take [such] action, including, but not limited to, . . . [¶] . . . hiring, reinstatement, or upgrading of employees, with or without backpay[, and] [¶] . . . restoration to membership in any respondent labor organization." The Supreme Court concluded that punitive damages, which are not remedial in nature, are not similar to the corrective measures enumerated in the statute and, hence, the commission was not authorized to award them. (43 Cal.3d at pp. 1390-1391.)

 Application of the *ejusdem generis* principle to subdivision (a), limits the concluding phrase, "other nonpecuniary damages," to the kind of damages specified in the preceding phrase ("pain, suffering, inconvenience, physical impairment, disfigurement"). Each of the enumerated items reflects a consequence of the plaintiff's personal and physical injury and a subjective loss for which money could compensate the victim. Imposition of punitive damages is triggered by the conduct and state of mind of the wrongdoer, not by the nature of the loss suffered by the plaintiff. (§ 3294.) Although defendants are correct that punitive damages, like pain and suffering, are not

"objectively verifiable monetary losses," they are dissimilar to the enumerated items of loss barred by subdivision (a). As we have discussed, punitive damages are not compensatory damages at all, but rather a penalty imposed to punish the wrongdoer and deter future misconduct.

Defendants point out that section 1431.2, subdivision (b)(1) defines "economic damages" (for purposes of comparative fault allocations) as "objectively verifiable monetary losses" including medical expenses, loss of earnings, and other measurable losses. According to defendants, punitive damages must be "non-economic" damages because they are not objectively verifiable monetary losses. Punitive damages, however, do not fit within the definition of "non-economic damages" in section 1431.2, subdivision (b)(2), i.e., "subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." The noneconomic damages referenced in section 1431.2, subdivision (b)(2), are subjective losses caused by an injury to plaintiff. Punitive damages are not losses at all.

The phrasing of section 3333.4 supports this construction. Subdivision (a) refers to both "non-economic" and "nonpecuniary" damages. The terms appear to be interchangeable in this context. Subdivision (b) collapses the reference simply to "non-economic" damages. Section 3333.2, subdivisions (a) and (b), part of MICRA, uses almost identical terminology and also treats the terms noneconomic and nonpecuniary interchangeably. The MICRA provisions, including section 3333.2, provide useful guidance in our examination of section 3333.4.

Section 3333.2, subdivision (a) provides that in actions against health care providers based on professional negligence, an injured plaintiff "shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage."[8] Subdivision (b) sets limits on recovery of noneconomic damages: "[i]n no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)." Although the California Supreme Court has not decided whether MICRA applies to intentional torts (see *Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 115-116 [83 Cal.Rptr.2d 145, 972 P.2d 966], cert. den. (1999) 528 U.S. 868 [120 S.Ct. 167, 145 L.Ed.2d 141]), other courts have concluded that the cap

---

[8]The two provisions use identical phrasing to describe damages except for a missing comma before "and other nonpecuniary damage" and the use of the word "damage" instead of "damages" in section 3333.2, subdivision (a). We attribute no significance to these differences.

on "noneconomic" damages in subdivision (b) does not apply to punitive damages. In *Baker v. Sadick* (1984) 162 Cal.App.3d 618 [208 Cal.Rptr. 676], the court upheld an arbitration award that included both compensatory and punitive damages in a medical malpractice case involving allegations of "fraud, wilful neglect, [and] malicious acts . . . ." The court held that subdivision (b) did not apply to intentional torts and reduced the compensatory award to the statutory $250,000 cap. But it also held that the limitation on "non-economic losses" did not preclude an award of punitive damages or operate to limit their amount. (*Baker v. Sadick, supra*, 162 Cal.App.3d at pp. 626-627; see also *Barris v. County of Los Angeles, supra*, [intentional tort claim not subject to the $250,000 limit on noneconomic damages]; *Waters v. Bourhis* (1985) 40 Cal.3d 424, 437 [220 Cal.Rptr. 666, 709 P.2d 469] [same].)[9] These cases place punitive damages outside the limitations of section 3333.2, subdivision (b) for "non-economic" damages. They provide a useful analogy in support of our determination that "punitive damages" also are outside the province of the limits to recovery of "non-economic" damages set forth in section 3333.4, subdivision (a).

We also are guided by the interpretation of section 3333.3, a companion provision to section 3333.4, which also was adopted pursuant to Proposition 213, and which prohibits recovery of damages by a convicted felon for injuries caused in the commission of or flight from the felony in an action based on negligence. In *Jenkins v. County of Los Angeles, supra*, 74 Cal.App.4th 524, we concluded that section 3333.3 does not limit recovery for damages caused by intentional torts. We did so on the basis of the plain language of the statute, as confirmed by the ballot pamphlet prepared for the 1996 General Election at which the statute was adopted. We observed that the ballot materials emphasized that the measure was intended to bar tort recovery of damages by felons only in actions based on negligence, and that nothing was said either in the statute or the ballot pamphlet to indicate that the prohibition was to apply to causes of action for intentional acts. Consequently, we held the plaintiff's causes of action for assault, battery, intentional infliction of emotional distress and violation of the Unruh Civil Rights Act were not within the bar of the statute. (74 Cal.App.4th at p. 532.)

Neither is there any explicit language in the ballot materials accompanying Proposition 213 to the effect that punitive damages should be or should not be included in the limited recovery provision of subdivision (a). There is, in fact, no mention of punitive damages at all in the ballot

---

[9]MICRA shares a common legislative purpose with Proposition 213, i.e., to reduce insurance costs (for malpractice) and thereby stabilize availability of healthcare. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111 [32 Cal.Rptr.2d 263, 876 P.2d 1062].)

materials. The absence of any reference to limits on punitive damages in the ballot materials leads to the common sense conclusion that the electorate did not intend to deny uninsured motorists the right to seek punitive damages in an appropriate case.

While there is no explicit statement about punitive damages in the ballot materials relating to Proposition 213, the findings and declaration of purpose in those materials support our conclusion. The purpose provision in the text of the initiative states: "(a) Insurance costs have skyrocketed for those Californians who have taken responsibility for their actions. Uninsured motorists, drunk drivers, and criminal felons are law breakers, and should not be rewarded for their irresponsibility and law breaking. However, under current laws, uninsured motorists and drunk drivers are able to recover unreasonable damages from law abiding citizens as a result of drunk driving and other accidents, and criminals have been able to recover damages from law-abiding citizens for injuries suffered during the commission of their crimes. [¶] (b) Californians must change the system that rewards individuals who fail to take essential personal responsibility to prevent them from seeking unreasonable damages or from suing law-abiding citizens. [¶] (c) Therefore, the People of the State of California do hereby enact this measure to restore balance to our justice system by limiting the right to sue of criminals, drunk drivers, and uninsured motorists." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) text of Prop. 213, p. 102.)

██ Distilled to its essence, this statement reflects a primary aim to limit automobile insurance claims by uninsured motorists, and thereby reduce insurance rates. "The electorate wanted to ensure that uninsured motorists, who contribute nothing to the insurance pool, would be restricted in what they receive from it. This principle of fairness fueled the initiative." (*Hodges v. Superior Court* (1999) *supra*, 21 Cal.4th at p. 115.)

In *Hodges*, the Supreme Court held that subdivision (a) does not limit an uninsured motorist's claims against his car's manufacturer for product liability. The court examined the ballot pamphlet and determined that the primary aim of the initiative—to limit automobile insurance claims by uninsured motorists, and thereby reduce insurance rates—would not be served by restricting claims against third party manufacturers. "The right to recover fully for an injury caused by a design defect, even by an uninsured motorist, has no bearing on any principle of fairness having to do with the financial responsibility laws. It is not clear that *anyone*—either the sponsors of the measure or the voters—intended to protect from products liability claims manufacturers who do not contribute to that pool and whose other insurance rates are not affected by the existence of uninsured motorists." (*Hodges v. Superior Court, supra,* 21 Cal.4th at p. 115.)

■ The *Hodges* court did not reach the issue whether punitive damages are a type of "nonpecuniary" damages referenced in section 3333.4 (*Hodges v. Superior Court, supra*, 21 Cal.4th at pp. 112-113.) Nevertheless, the *Hodges* analysis of the electorate's purpose behind Proposition 213 is instructive. As applied to punitive damages recovery, the initiative's "principle of fairness" in the makeup of the insurance pool loses considerable steam. Because it is against public policy to indemnify another for punitive damage liability (Ins. Code, § 533; see *PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 317-318 [84 Cal.Rptr.2d 455, 975 P.2d 652]), insureds do not (because they cannot) contribute to an insurance pool for punitive damages. Although a motorist theoretically could obtain insurance to pay for the defense of a claim seeking punitive damages, that theoretical possibility does not drive the main point, i.e., that recovery of punitive damages is unlikely to have a noticeable effect on the insurance pool. We conclude that there is no legal bar to allowing uninsureds to recover punitive damages from insured drivers when such recovery is otherwise appropriate, just as the Supreme Court in *Hodges* concluded that there was no bar to allowing unrestricted suits against third party car manufacturers, which also do not contribute to the insurance pool.

We conclude that punitive damages are of a different kind than the "non-economic" and "nonpecuniary" damages referred to in section 3333.4, subdivision (a) and were not included within the limited recovery provision of that statute. Accordingly, plaintiffs are not prohibited by that statute from pursuing their punitive damages claims in this action. Of course, we express no view on the merits of those claims.

### DISPOSITION

The petition is denied. The temporary stay order is vacated. Real parties in interest to recover their costs in this proceeding.

Hastings, J., and Curry, J., concurred.

On September 25, 2000, the opinion was modified to read as printed above.