[No. D041167. Fourth Dist., Div. One. May 21, 2003.]

PEDRO MARRON et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
TAREK I. HASSANEIN et al., Real Parties in Interest.

COUNSEL

Ross, Dixon & Bell, Jon R. Williams, James J. Dalessio; Schoville & Arnell, Dennis A. Schoville and Louis G. Arnell for Petitioners.

No appearance for Respondent.

Lotz, Doggett & Rawers and J. Jason Hill for Real Parties in Interest.

OPINION

**McDONALD, J.**—Plaintiffs Pedro Marron and Maria Marron, individually and as successors in interest of Lidia Marron (together the Marrons), filed this petition for writ of mandate challenging the trial court's order granting the motion of defendant Regents of the University of California (RUC) for summary adjudication of the Marrons' dependent adult abuse cause of action against it. The Marrons contend the trial court erred by concluding Government Code section 818, which exempts public entities from liability for punitive or exemplary damages, precludes their cause of action against RUC for enhanced remedies under Welfare and Institutions Code section 15657.[1]

FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 23, 2000, Lidia Marron, then 44 years old, entered UCSD Medical Center (the Hospital) for a liver biopsy. The Hospital is owned and operated by RUC, which is a division of the State of California. Complications arose during the procedure when the biopsy needle perforated Lidia's middle colic vein, causing damage to her abdominal viscera and requiring emergency surgery. Following surgery, Lidia was admitted to the Hospital's intensive care unit. During her subsequent two-month stay at the Hospital, she suffered complications, including fungus infections in her blood and lungs, peritonitis, intra-abdominal and pelvic abscesses, sepsis syndrome, hypotension, fevers, abdominal pain and hemorrhaging.

On October 28 she was discharged from the Hospital. On October 31 she returned to the Hospital because of a spiking fever. On November 8 she was discharged from the Hospital, but returned within 12 hours because of fevers, chills and severe pain. A CT scan showed an intra-abdominal abscess. She became progressively septic and was diagnosed with enterocutaneous fistula.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] The factual summary in this opinion is based on the allegations in the Marrons' complaint and the parties' separate statements of material facts.

On December 13 Lidia died.

The Marrons, as Lidia's parents and successors in interest, filed a complaint against defendants RUC and Tarek I. Hassanein, M.D., alleging causes of action for wrongful death and section 15657 dependent adult abuse. The dependent adult abuse cause of action alleges the defendants "failed to exercise the requisite degree of care but rather acted with recklessness in the failure to appropriately and adequately care for, monitor, and treat Lidia Marron's declining health condition from" August 23 through December 13, 2000. It further alleges the defendants "failed to recognize and treat obvious signs of uncontrolled hemorrhage, failed to protect [Lidia] from health and safety hazards, failed to assist in personal hygiene, failed to provide an adequate environment for the level of care that was needed, ignoring obvious signs of stress and disease, causing [her] to suffer protracted pain, discomfort, mental suffering, indignity and humiliation up to the time of her death." The complaint seeks damages for Lidia's pain and suffering and an award of reasonable attorney fees and costs pursuant to section 15657.

RUC filed a motion for summary adjudication of the dependent adult abuse cause of action, asserting, inter alia, that Government Code section 818 provided it with immunity against section 15657 damages and attorney fees and costs.[3] The Marrons opposed the motion, arguing that because section 15657 does not provide for punitive damages, Government Code section 818 does not bar an award of section 15657 enhanced remedies against RUC.

The trial court granted RUC's motion for summary adjudication, stating: "[T]he [dependent adult abuse] cause of action impermissibly seeks punitive damages against a public entity in violation of Government Code section 818. . . . [T]he pain and suffering [Lidia] suffered was personal to her and ceased to be an element of compensation upon her death. As a result, . . . the Legislature's decision [in section 15657] to abrogate [Code of Civil Procedure] section 377.34 as a result of a caregiver's reckless neglect is punitive in nature, as it is intended to award damages in excess of just compensation. The same logic applies vis-á-vis the recovery of attorney's fees, as this is an award in excess of just compensation for [Lidia's] injuries."[4] During oral argument on the motion, the trial court further stated: "To me [section 15657's enhanced remedies constitute] a penalty. [They are]

---

[3]RUC alternatively asserted: (1) there was no evidence it acted with recklessness, oppression, fraud or malice as required under section 15657; (2) there was no evidence or allegation that a managing agent of RUC ratified the alleged misconduct; and (3) Lidia did not qualify as a dependent adult under the dependent adult abuse law.

[4]The trial court did not address the alternative grounds RUC asserted for summary adjudication.

an amount of money in addition to compensation and [they penalize] someone for reckless conduct . . . ."

The Marrons filed this petition for writ of mandate, challenging the trial court's order granting the motion for summary adjudication. RUC filed a response, arguing the trial court correctly concluded it was immune under Government Code section 818 from liability for section 15657 enhanced remedies. We issued an order to show cause, stayed trial of this matter and heard oral argument.

DISCUSSION

I

*Consideration of the Petition*

■ The Marrons contend we should consider their petition for writ of mandate because they have an inadequate remedy at law and will suffer irreparable injury if their petition is not granted. They argue the trial court's order has the effect of barring a substantial portion of their case on the merits and a second trial would be a waste of judicial and litigant resources. Furthermore, they assert the instant issue is one of law that is of first impression and of public interest.

An order granting a motion for summary adjudication may be reviewed by way of a petition for writ of mandate. (Code Civ. Proc., § 437c, subd. (m)(1); *Federal Deposit Ins. Corp. v. Superior Court* (1997) 54 Cal.App.4th 337, 345 [62 Cal.Rptr.2d 713].) The issuance of our order to show cause constituted an effective determination that the Marrons' remedy at law was not adequate. (*Community Care & Rehabilitation Center v. Superior Court* (2000) 79 Cal.App.4th 787, 790, fn. 3 [94 Cal.Rptr.2d 343]; *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].) We further conclude the Marrons would suffer irreparable injury if a second trial were required because of an erroneous summary adjudication by the trial court. (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1183 [272 Cal.Rptr. 304].) Furthermore, the petition presents a significant issue of first impression. (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182 [123 Cal.Rptr.2d 637]; *Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 702 [114 Cal.Rptr.2d 541].) Therefore, we exercise our discretion to consider the petition.

II

*Summary Adjudication Standard of Review*

"[A motion for] [s]ummary adjudication is properly granted when the evidence in support of the moving party establishes that there is no issue of

[material] fact to be tried as to a particular cause of action, affirmative defense, claim for damages or issue of duty. (Code Civ. Proc., § 437c, subd. (f); *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46][, superseded by statute on other grounds as noted in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493]].) ■ The aim of the procedure is to discover whether the parties possess evidence requiring the weighing procedures of a trial. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].)" (*Federal Deposit Ins. Corp. v. Superior Court, supra,* 54 Cal.App.4th at pp. 344-345.) For a defendant to prevail on a summary adjudication motion, the defendant generally must establish an affirmative defense or show one or more elements of the cause of action cannot be established. (Code Civ. Proc., § 437c, subd. (*o*).) In moving for summary adjudication, a defendant meets its "burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) ■ If the trial court concludes there is no triable issue of material fact and "the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. [Citation.]" (*Federal Deposit Ins. Corp., supra,* at p. 345.) ■ In reviewing an order granting a motion for summary adjudication, "we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

## III

### *Elder Abuse and Dependent Adult Civil Protection Act*

The Elder Abuse and Dependent Adult Civil Protection Act (§ 15600 et seq., hereinafter the Act) provides for both criminal and private civil enforcement of elder and dependent adult abuse laws. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986].) ■ "[O]ne of the major objectives of [the Act] was the protection of residents of nursing homes and other health care facilities." (*Id.* at p. 37.) Section 15610.07 defines "abuse of an elder or dependent adult" as:

"(a) Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering[; or]

"(b) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." The Act's definition

of "neglect" includes: "The negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." (§ 15610.57, subd. (a)(1).) The Act's definition of "care custodian" includes members of the support staff of 24-hour health facilities as defined in Health and Safety Code sections 1250, 1250.2, and 1250.3.[5] (§ 15610.17, subd. (a).) The Act's definition of a "dependent adult" includes "any person between the ages of 18 and 64 years who is admitted as an inpatient to a 24-hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety Code." (§ 15610.23, subd. (b).)

In 1991 the Act was amended to allow in certain circumstances awards of heightened or enhanced remedies that would not otherwise be recoverable in an ordinary private, civil action for elder or dependent adult abuse. (*ARA Living Centers—Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1563-1564 [23 Cal.Rptr.2d 224]; *Delaney v. Baker, supra,* 20 Cal.4th at pp. 33-36.) Those enhanced remedies include awards of reasonable attorney fees and costs and limited damages for a decedent's pain and suffering. (§ 15657; *ARA Living Centers—Pacific, Inc., supra,* at p. 1564; *Delaney, supra,* at p. 33.) Section 15657 provides: "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63, neglect as defined in Section 15610.57, or financial abuse as defined in Section 15610.30, and that the defendant has been guilty of *recklessness,* oppression, fraud, or malice in the commission of this abuse, *in addition to all other remedies* otherwise provided by law: [¶] (a) *The court shall award to the plaintiff reasonable attorney's fees and costs.* The term 'costs' includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article. [¶] (b) *The limitations imposed by Section 3[7]7.34 of the Code of Civil Procedure on the damages recoverable shall not apply. However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.* [¶] (c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."[6] (Italics added.)

---

[5] RUC does not dispute that the Hospital is a 24-hour health facility as defined in Health and Safety Code sections 1250, 1250.2, and 1250.3.

[6] Civil Code section 3333.2, subdivision (b) provides: "In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)."

## IV

*Interpretation of Section 15657 and Government Code Section 818*

■ The Marrons contend the trial court erred by concluding as a matter of law that RUC could not be found liable for section 15657's enhanced remedies because they are precluded by Government Code section 818's prohibition of awards of exemplary and punitive damages against public entities. As the parties note, this issue is a question of law that appears to be one of first impression in the California courts.

### A

Government Code section 818 provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other *damages imposed primarily for the sake of example and by way of punishing the defendant.*"[7] (Italics added.) ■ "Government Code section 818 in context means that . . . a plaintiff who alleges injury caused by a public entity may be entitled to actual damages for that injury, but not punitive damages. [Citations.]" (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 145 [279 Cal.Rptr. 318, 806 P.2d 1353].) ■ Punitive damages and compensatory damages serve different purposes. (*State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, ___ [123 S.Ct. 1513, 1515, 155 L.Ed.2d 585]; *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001) 532 U.S. 424, 432 [121 S.Ct. 1678, 1683, 149 L.Ed.2d 674].) Compensatory damages "are intended to redress the concrete *loss that the plaintiff has suffered* by reason of the defendant's wrongful conduct. [Citations]." (*Cooper Industries, supra*, at p. 432 [121 S.Ct. at p. 1683], italics added.) In contrast, punitive damages "operate as 'private fines' intended to punish the defendant and to deter future wrongdoing." (*Ibid.*) In determining compensatory damages, "[a] jury's *assessment of the extent of a plaintiff's injury* is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation. [Citations.]" (*Ibid.*, italics added.) Punitive damages are *not* compensation *for loss or injury.* (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 350 [94 S.Ct. 2997, 3012, 41 L.Ed.2d 789]; *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 980 [105 Cal.Rptr.2d 88]; *Nakamura v. Superior Court* (2000) 83 Cal.App.4th 825, 834 [100 Cal.Rptr.2d 97] ["Punitive damages do not compensate for loss."].) Punitive damages must bear a reasonable relationship and be proportionate to the actual harm suffered by

---

[7]Civil Code section 3294, subdivision (a) provides: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

the plaintiff (i.e., compensatory damages). (*State Farm, supra,* 538 U.S. at p. ___ [123 S.Ct. at p. 1515]; *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 580 [116 S.Ct. 1589, 1601, 134 L.Ed.2d 809].) Therefore, "section 818 of the Government Code, in referring to 'damages imposed primarily for the sake of example and by way of punishing the defendant' contemplates . . . punitive damages [that] are designed to punish the defendant rather than to compensate the plaintiff. *Punitive damages are* by definition in addition to actual damages and *beyond the equivalent of harm done.* [Citations.]" (*State Dept. of Corrections v. Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885, 891 [97 Cal.Rptr. 786, 489 P.2d 818], italics added.)

Compensatory damages are described in Civil Code section 3333: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount [that] will compensate *for all the detriment proximately caused* thereby, whether it could have been anticipated or not." (Italics added.) Those damages "compensate the victim *for injury suffered.* [Citation.]" (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 516 [28 Cal.Rptr.2d 475, 869 P.2d 454], italics added.) Compensatory damages generally include damages for pain and suffering caused by a defendant's breach of a noncontractual obligation. (Civ. Code, § 3333; *Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892-893 [103 Cal.Rptr. 856, 500 P.2d 880] [pain and suffering is a genuine detriment that requires compensation].) ██ "[T]he unitary concept of 'pain and suffering' has served as a convenient label under which a plaintiff may recover not only for physical pain but [also] for fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal. [Citations.]" (*Capelouto, supra,* at pp. 892-893.) The term *pain and suffering* "reflects a consequence of [a victim's] personal and physical injury and a subjective loss for which money could compensate the victim." (*Nakamura v. Superior Court, supra,* 83 Cal.App.4th at p. 835.) Punitive damages are *dissimilar* to pain and suffering and other compensatory damages. (*Id.* at pp. 835-836.)

Although a victim ordinarily may be entitled to compensation for pain and suffering sustained from a defendant's breach of a noncontractual obligation, that compensation *generally* cannot be recovered after the victim's death because of Code of Civil Procedure section 377.34, which provides: "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the *damages recoverable* are limited to the loss or damage that the decedent sustained or incurred before death, *including any* penalties or *punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do*

*not include damages for pain, suffering, or disfigurement.*" (Italics added.) That statute distinguishes between a decedent's pain and suffering damages and a decedent's punitive or exemplary damages. Because a decedent's representative or successor in interest may pursue a cause of action for recovery of punitive damages to which the decedent would have been entitled had the decedent lived, but may not recover damages for pain and suffering the decedent sustained before his or her death, it appears the decedent's pain and suffering damages are distinct and different from punitive or exemplary damages.

## B

We conclude the enhanced remedies available under section 15657 are *not* punitive or exemplary damages under Government Code section 818, and the trial court erred by granting RUC's motion for summary adjudication on the Marrons' section 15657 cause of action. Had Lidia lived despite the alleged dependent adult abuse, she would have been entitled to recover any and all pain and suffering damages in a section 15657 action against RUC.[8] (*ARA Living Centers—Pacific, Inc. v. Superior Court, supra,* 18 Cal.App.4th at p. 1564.) However, Lidia died before she could file an action and obtain an award for the pain and suffering she allegedly sustained. Although Code of Civil Procedure section 377.34 ordinarily would bar Lidia's successors in interest from recovering her pain and suffering damages, section 15657 expressly allows recovery of those pain and suffering damages (subject to Civ. Code, § 3333.2, subd. (b)'s $250,000 limitation). (*ARA Living Centers, supra,* at p. 1564.) If the Marrons prove by clear and convincing evidence that RUC committed reckless neglect in caring for Lidia, section 15657 allows them to recover all remedies provided by law, including reasonable attorney fees and costs and Lidia's pain and suffering damages (subject to Civ. Code, § 3333.2, subd. (b)'s $250,000 limitation). Section 15657 expressly provides that "[t]he limitations imposed by Section 3[7]7.34 of the Code of Civil Procedure on the damages recoverable shall not apply." (§ 15657, subd. (b).)

RUC argues, and the trial court concluded, that section 15657's express exception to Code of Civil Procedure section 377.34's general preclusion of awards of a decedent's pain and suffering damages equates to an award of punitive or exemplary damages under Government Code section 818. However, considering the language of those statutes and the general statutory and common law regarding compensatory and punitive damages, we conclude section 15657's enhanced remedies are *not* punitive or exemplary in nature

---

[8]Code of Civil Procedure section 377.34's general preclusion of an award of pain and suffering damages does not apply unless the victim has died.

or "damages imposed primarily for the sake of example and by way of punishing the defendant" under Government Code section 818.[9] An award of Lidia's pain and suffering damages that Code of Civil Procedure section 377.34 otherwise would preclude is based on, and measured by, Lidia's *actual loss or injury*. Lidia's alleged pain and suffering damages are part of the compensation "for all the detriment proximately caused" by RUC's alleged reckless neglect. (Civ. Code, § 3333.) An award of Lidia's alleged pain and suffering damages would provide the Marrons with compensation *for the injury* Lidia sustained. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra,* 7 Cal.4th at p. 516.) Compensatory damages include damages for pain and suffering caused by a defendant's breach of a noncontractual obligation. (Civ. Code, § 3333; *Capelouto v. Kaiser Foundation Hospitals, supra,* 7 Cal.3d at pp. 892-893 [pain and suffering is a genuine detriment that requires compensation].) In contrast, punitive damages are *not* compensation *for loss or injury*. (*Gertz v. Robert Welch, Inc., supra,* 418 U.S. at p. 350 [94 S.Ct. at p. 3012]; *Piscitelli v. Friedenberg, supra,* 87 Cal.App.4th at p. 980; *Nakamura v. Superior Court, supra,* 83 Cal.App.4th at p. 834 ["Punitive damages do not compensate for loss."]; *Matter of Guardianship/Conservatorship of Denton* (1997) 190 Ariz. 152, 156 [945 P.2d 1283, 1287] ["[P]ain and suffering damages are compensatory, not punitive."].)[10] Furthermore, "[p]*unitive damages are* by definition in addition to actual damages and *beyond the equivalent of harm done.* [Citations.]" (*State Dept. of Corrections v. Workmen's Comp. App. Bd., supra,* 5 Cal.3d at p. 891, italics added.) Because Lidia's pain and suffering damages are based on the harm done by RUC's alleged reckless neglect, they are *not* "beyond the equivalent of harm done" and therefore cannot be considered punitive

[9]*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382 [20 Cal.Rptr.2d 523, 853 P.2d 978], involving statutory *penalties* imposed on public entities, and other cases cited by RUC, are inapposite to this case and do not persuade us to conclude otherwise.

[10]In *Matter of Guardianship/Conservatorship of Denton, supra,* 190 Ariz. 152 [945 P.2d 1283], the Arizona Supreme Court concluded that Arizona's elder abuse statute allows recovery of damages for a decedent's pain and suffering despite that state's survival statute that otherwise would bar recovery of those damages. (*Id.* at pp. 155-157 [945 P.2d at pp. 1286-1288].) *Denton* noted in part: "The legislature's intent and the policy behind the elder abuse statute are clear. Arizona has a substantial population of elderly people, and the legislature was concerned about elder abuse. In civil actions for elder abuse, pain and suffering may be the only compensable damages the victim may recover. Because incapacitated or vulnerable adults are not employed, they cannot recover damages for lost earnings or diminished earning capacity. Because incapacitated or vulnerable adults generally have Medicare, Medicaid coverage, or other insurance, they may not recover for medical expenses. . . . As a result, the most likely form of damages recoverable in these cases are for pain and suffering. [Citation.] [¶] Furthermore, most vulnerable or incapacitated adults are near the end of their lives. Under defendants' theory, the tortfeasor would have a great incentive to delay litigation until the victim dies. If we were to subscribe to defendants' theory, the policy of the elder abuse statute would not be furthered." (*Id.* at pp. 156-157 [945 P.2d at pp. 1287-1288].)

damages.[11] (*State Dept. of Corrections*, at p. 891; cf. *People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 36-39 [127 Cal.Rptr. 122, 544 P.2d 1322] [civil penalties imposed to more fully compensate the state are not punitive damages under Gov. Code, § 818 if they "are not beyond an amount equivalent to the harm done"]; *LeVine v. Weis* (2001) 90 Cal.App.4th 201, 209 [108 Cal.Rptr.2d 562] [because award of statutory double backpay under Gov. Code, § 12653 "serves to more fully compensate the employee for the incalculable risk he takes when he threatens to disclose or discloses his employer's false claim," it is not punitive damages under Gov. Code, § 818].)

Punitive damages are *dissimilar* to pain and suffering and other compensatory damages. (*Nakamura v. Superior Court, supra*, 83 Cal.App.4th at pp. 835-836.) Furthermore, under Code of Civil Procedure section 377.34, a decedent's representative or successor in interest may pursue a cause of action for recovery of punitive damages to which the decedent would have been entitled had the decedent lived, but may not recover damages for pain and suffering the decedent suffered before his or her death. The decedent's pain and suffering damages are therefore distinct from punitive or exemplary damages. Under Government Code section 818, "a plaintiff who alleges injury caused by a public entity may be entitled to *actual damages for that injury*, but not punitive damages. [Citations.]" (*Kizer v. County of San Mateo, supra*, 53 Cal.3d at p. 145, italics added.)

RUC argues that section 15657, subdivision (c)'s incorporation of the standard for holding employers liable for punitive damages under Civil Code section 3294, subdivision (b) shows section 15657's enhanced remedies were intended to be, and are, punitive damages. Section 15657, subdivision (c) provides: "The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer." Civil Code section 3294, subdivision (b) provides: "An employer shall not be liable for damages pursuant to subdivision (a) [i.e., where, by clear and convincing evidence, plaintiff shows defendant's breach of a

---

[11]RUC argues section 15657's pain and suffering damages must be considered punitive damages because a decedent cannot be made whole or be compensated for pain and suffering sustained before his or her death. However, the crucial issue is whether those damages are for a loss or injury suffered by the decedent, not whether a decedent can be compensated for that loss or injury after his or her death. Therefore, section 15657's limited *revival* of a decedent's pain and suffering damages, as an express exception to the survival statute (i.e., Code Civ. Proc., § 377.34), is not intended to punish a defendant and does not provide for punitive or exemplary damages under Government Code section 818. Section 15657 does not cause a public entity or other defendant to pay damages in excess of lawful compensation.

noncontractual obligation is done with oppression, fraud, or malice], based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or the safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." We are not persuaded by RUC's argument. Section 15657, subdivision (c)'s incorporation of Civil Code section 3294, subdivision (b)'s standard for holding an employer liable for punitive damages based on an employee's outrageous conduct does *not* show section 15657's enhanced remedies are intended to be punitive damages. Rather, incorporation of that standard is merely a simple statutory means for setting forth what actions of an employer suffice for holding that employer liable for an employee's reckless neglect or other egregious conduct under section 15657. Section 15657, subdivision (c) incorporates a standard of conduct rather than the remedy or damages to be awarded if that conduct is found to have occurred. Because section 15657 and Civil Code section 3294 provide for different remedies, their use of a common standard for initially determining an employer's liability is irrelevant in determining whether section 15657's enhanced remedies are to be considered punitive damages. Furthermore, RUC's argument does not apply to section 15657 cases that do not involve employers. The characterization of section 15657 enhanced remedies presumably should not change based on whether the defendant is an individual or an employer of that individual.

 We also conclude that an award of reasonable attorney fees and costs under section 15657 cannot be considered punitive or exemplary damages under Government Code section 818. Section 15657's authorization of awards of attorney fees and costs was intended to act as an incentive for attorneys to accept elder or dependent adult abuse cases that involve recklessness or more egregious conduct. In enacting the 1991 amendments to the Act that included section 15657, "[t]he Legislature pointed out that few civil actions were being brought in connection with elder [or dependent adult] abuse due in part to lack of incentives. It then provided some incentives [i.e., reasonable attorney fees and costs and limited pain and suffering damages]." (*ARA Living Centers—Pacific, Inc. v. Superior Court, supra,* 18 Cal.App.4th at pp. 1564-1565.) Section 15600, subdivision (h) states: "The Legislature further finds and declares that infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays,

and the lack of incentives to prosecute these suits." Section 15600, subdivision (j) states: "It is the further intent of the Legislature in adding [section 15657 et seq.] to this chapter to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." *Delaney* noted: "As was stated in the Senate Rules Committee's analysis of Senate Bill No. 679, 'in practice, the death of the victim and the difficulty in finding an attorney to handle an abuse case where attorneys fees may not be awarded[] impedes many victims from suing successfully. [¶] This bill would address the problem by: . . . authorizing the court to award attorney's fees in specified cases; [and by] allowing pain and suffering damages to be awarded when a verdict of intentional and reckless abuse was handed down after the abused elder dies.' (Sen. Rules Com., Analysis of Sen. Bill No. 679 (1991-1992 Reg. Sess.) as amended May 8, 1991, p. 3.)" *(Delaney v. Baker, supra,* 20 Cal.4th at p. 33.)

Fee-shifting statutes generally are intended to enable parties to retain attorneys to represent them in certain types of cases. The goal of those statutes is "to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific . . . laws. Hence, if plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he [or she] will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied." *(Pennsylvania v. Del. Valley Citizens' Council* (1986) 478 U.S. 546, 565 [106 S.Ct. 3088, 3098, 92 L.Ed.2d 439].) We conclude section 15657's attorney fees and costs provision was intended to encourage attorneys to take on cases of elder and dependent adult abuse. There is nothing in the Act or its legislative history to support RUC's position that awards of reasonable attorney fees and costs under section 15657 are intended to punish defendants.

Furthermore, awards of statutory attorney fees are usually considered an element of costs. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 146, p. 661; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4 [71 Cal.Rptr.2d 830, 951 P.2d 399].) We recently noted: "Under Code of Civil Procedure section 1033.5, subdivision (a)(10), *attorney fees are allowable as costs* under Code of Civil Procedure section 1032, '*when authorized by* any of the following: [¶] (A) Contract. [¶] (B) *Statute.* [¶] (C) Law.' " *(Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 143 [118 Cal.Rptr.2d 569], fn. omitted, italics added; see also *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1386 [15 Cal.Rptr.2d 53].) Recovery of litigation *costs,* including statutory attorney fees, is *not* considered part of an award of *damages.* "When authorized by statute, awards of attorney's fees are expressly defined as costs, not damages. ([Code Civ. Proc.,] § 1033.5, subd. (a)(10)(B).)" *(Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50

Cal.App.4th 1301, 1308 [58 Cal.Rptr.2d 303].) The California Supreme Court also recently stated: "Statutory attorney fees are not of course intended to compensate the 'prevailing party' for damages suffered." (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 586 [110 Cal.Rptr.2d 809, 28 P.3d 860].) In concluding a prevailing party's *attorney* is entitled to an award of statutory attorney fees absent a contrary agreement, *Flannery* noted that in certain circumstances: "Paying the proceeds of a [statutory attorney fee] award to the party rather than to counsel in such circumstances [i.e., when there is no agreement requiring attorney compensation and no fees have been paid] would, from the perspective of those paying them, transform the award, without legislative authorization, into a kind of punitive damages." (*Ibid.*) Therefore, an award to a party's attorney of statutory attorney fees (when attorney fees have been paid pursuant to a fee agreement) cannot be considered punitive damages. (*Ibid.*)

Because awards of statutory attorney fees generally are considered awards of costs and not damages, we conclude an award of reasonable attorney fees and costs under section 15657 cannot be considered an award of punitive damages (unless possibly there is no fee agreement and no fees have been paid). (Code Civ. Proc., § 1033.5, subd. (a)(10)(B); *Flannery v. Prentice, supra,* 26 Cal.4th at p. 586; *Carver v. Chevron U.S.A., Inc., supra,* 97 Cal.App.4th at p. 143; *Cummings v. Benco Building Services, supra,* 11 Cal.App.4th at p. 1386; *Elton v. Anheuser-Busch Beverage Group, Inc., supra,* 50 Cal.App.4th at p. 1308.) Therefore, the trial court erred by concluding an award of section 15657 reasonable attorney fees and costs necessarily constitutes an award of exemplary or punitive damages under Government Code section 818.

V

*RUC's Asserted Independent Grounds for Summary Adjudication*

██ RUC contends there are grounds independent of Government Code section 818 on which the trial court's grant of its motion for summary adjudication can be affirmed.

RUC argues that Lidia could not be considered a "dependent adult" under the Act because there is no evidence she suffered from a disability that precluded her from carrying out normal activities or being able to protect her rights. However, the Act's definition of a "dependent adult" includes "any person between the ages of 18 and 64 years who is admitted as an inpatient to a 24-hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety Code." (§ 15610.23, subd. (b).) RUC argue that the

Act's other definition of a "dependent adult" in section 15610.23, subdivision (a) is a prerequisite to Lidia's qualification as a dependent adult under the Act. Section 15610.23, subdivision (a) provides: " 'Dependent adult' means any person between the ages of 18 and 64 years who resides in this state and who has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities, or whose physical or mental abilities have diminished because of age." Section 15610.23, subdivision (a) provides an *alternative* definition of a "dependent adult" and is *not* a prerequisite to qualification as a "dependent adult" under the definition in section 15610.23, subdivision (b).

Citing section 15657, subdivision (c), RUC argues the Marrons did not allege or submit evidence supporting an inference that it ratified the actions of its employees, which actions allegedly constituted reckless neglect in caring for Lidia. However, the Marrons' complaint alleges RUC "failed to exercise the requisite degree of care but rather acted with recklessness in the failure to appropriately and adequately care for, monitor, and treat Lidia Marron's declining health condition . . . ." As a public entity, RUC can act only through its employees or agents. It is implied that the acts alleged in the complaint were done by RUC's employees or agents. Therefore, the complaint, by alleging RUC is liable under section 15657, implicitly alleges the requirements of section 15657, subdivision (c) are satisfied. To the extent the complaint should have expressly stated that allegation, any demurrer based on that deficiency should be sustained only with leave to amend the complaint. Furthermore, regarding RUC's assertion the Marrons did not submit any evidence that it ratified the reckless neglect of its employees, the Marrons submitted evidence showing that Mary Middleton, the Hospital's director of patient care services, had actual knowledge of understaffing complaints made by nurses caring for Lidia and apparently did not take any remedial action.[12] The Marrons also submitted excerpts from the deposition testimonies of percipient witnesses regarding the specific acts of reckless neglect allegedly committed in caring for Lidia.[13] Furthermore, the Marrons' separate statement of disputed facts asserted that Mary Middleton, as the

---

[12]The nurses' complaints alleged they were given assignments that "posed a potential threat to the health and safety of [their] patients" and staffing was insufficient to "meet the individual patient care needs/requirements of [their] patients."

[13]Those excerpts were submitted in support of the Marrons' separate statement of disputed facts, which stated: "1. On many occasions Lidia had feces or other soiling in her bed and the nurses would take hours to clean it after having notice of the problem, often resulting in a family member changing the sheets. [¶] 2. On many occasions, the nurses would not bathe Lidia Marron despite her being soiled with blood or feces and despite the nurses having knowledge of this condition. [¶] 3. Lidia Marron had fungus growing in her mouth and the nurses were not brushing her teeth or otherwise keeping her mouth clean. [¶] 4. Lidia was not being assisted to the bathroom by the nurses despite her incontinent condition, resulting in her

Hospital's director of patient care services, was responsible for the Hospital's nursing services and staffing and therefore was a managing agent of RUC. The Marrons submitted sufficient evidence to raise a triable issue of material fact whether a managing agent of RUC ratified the alleged reckless neglect of the Hospital's nurses in caring for Lidia.

 RUC also argues the Marrons, in opposing its motion for summary adjudication, did not submit any admissible evidence to support an inference that RUC or its employees acted with reckless neglect in caring for Lidia. Rather than arguing that the Marrons' evidence does not show reckless neglect, RUC argues that the evidence submitted by the Marrons in opposing the summary adjudication motion lacked a proper foundation because that evidence was uncertain regarding the specific time or place of the act or the specific person who committed the act. However, our review of the Marrons' opposition papers does not support RUC's assertion. Many of the alleged instances of reckless neglect consisted of acts of omission, not commission, and therefore a specific time, place, or person may not necessarily be identified with the alleged omission. Furthermore, the excerpts from the deposition testimonies of percipient witnesses sufficiently described, for purposes of successfully opposing the summary adjudication motion, the specific acts and omissions constituting the alleged reckless neglect. To the extent the Marrons are required to show that RUC or its employees acted with " a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved' " (*Delaney v. Baker, supra,* 20 Cal.4th at pp. 31-32) as RUC asserts, the Marrons' opposing papers therefore included sufficient admissible evidence to support an inference that there was reckless neglect in caring for Lidia. Although at trial the trial court may exclude evidence that is irrelevant or does not have a proper foundation, RUC has not shown that all of the Marrons' evidence submitted in opposition to the summary adjudication motion is inadmissible or insufficient to show reckless neglect.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order of October 25, 2002, granting RUC's motion for summary adjudication of the dependent adult abuse cause of action and to enter a new order denying

---

having to lie in soiled sheets. [¶] . . . [¶] 7. During one protracted hemorrhaging incident, the nurses would not assist in putting pressure on the wound or sopping up the blood, thus requiring the family members who were present to attempt to control the bleeding on their own. [¶] 8. On some occasions, Lidia's blood sugar would [be] too low and the nurses would not assist, requiring the family members to attend to this medical problem."

the motion. Costs are awarded to the prevailing party. The stay issued by this court on January 16, 2003, is vacated.

Nares, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied June 13, 2003.