### In re MARINER POST–ACUTE NETWORK, INC., et al., Debtors.

### No. 00–113 MFW.

United States Bankruptcy Court, D. Delaware.

July 22, 2004.

Mark D. Collins, Esquire, Russell C. Silberglied, Esquire, Richards, Layton & Finger, P.A., Wilmington, DE, Jeffrey H. Davidson, Esquire, K. John Shaffer, Esquire, Stutman, Treister & Glatt, P.C., Los Angeles, CA, for Debtors.

William Taylor, Esquire, McCarter & English, LLP, Wilmington, DE, Joshua S. Markowitz, Esquire, Law Offices of Joseph W. Carcione, Jr., Redwood City, CA, for The Durr Claimants.

## MEMORANDUM OPINION[1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Emergency Motion of the Reorganized Debtors to Enforce Joint Plan of Reorganization, Confirmation Order, and the Discharge Injunction and the Objection of the Durr Claimants thereto. For the reasons set forth below, we deny the Motion.

## I. FACTUAL BACKGROUND

On January 18, 2000, Mariner Post-Acute Network, Inc., and several of its affiliates ("the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code. On April 3, 2002, the Debtors' Second Amended Joint Plan of Reorganization ("the Plan") was confirmed; the Plan became effective on May 13, 2002.

On September 13, 2002, Kathryn Dematteis, individually and as Administratrix of the Estate of Alice Durr, filed an action in California against several defendants (including some of the Debtors) asserting elder abuse, fraud, intentional infliction of emotional distress, negligence per se, and wrongful death. On or about September 16, 2002, a separate action alleging the same grounds was commenced by Betty Lewis against the same defendants. The two actions were consolidated ("the California Action"). The Plaintiffs in the California Action are referred to herein as "the Durr Claimants." The California Action is premised largely on post-petition actions by the defendants as the patient's death occurred on June 2, 2002. On April 20, 2004, the Durr Claimants amended the complaint to seek punitive damages.

On May 3, 2004, the Debtors filed this Motion seeking an order prohibiting the Durr Claimants from prosecuting their post-petition claim for punitive and other non-compensatory damages in the California Action. The Durr Claimants objected to the Motion. In reply, the Debtors have agreed to allow the California Court to determine many of the issues raised by their Motion.[2] The only issue before us is whether the Plan and Confirmation Order preclude the Durr Claimants from seeking attorneys fees from the Debtors for the period prior to confirmation of the Debtors' Plan.[3]

## II. JURISDICTION

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(1), (b)(2)(A), (B), & (O).

## III. DISCUSSION

■ The Debtors argue that the Durr Claimants' request for attorneys fees in the California Action violates the provisions of the Plan and the Confirmation Order. Specifically, the Plan provides that Administrative Expenses include post-petition personal injury claims, but that Allowed Administrative Expenses do not "include non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or any other claims or obligations that do not compensate for actual losses incurred." The Confirmation

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters by Rule 9014.

2. Those issues include whether punitive damages, enhanced remedies, or statutory attorneys fees can be covered by insurance.

3. The Debtors concede that they are not entitled to any relief with respect to any claim for attorneys fees or punitive damages that arose after April 3, 2002.

Order provides that all claims that arose prior to the entry of that Order (April 3, 2002) are to be treated pursuant to the Plan and otherwise discharged. (Confirmation Order at ¶ 31.) As a result, the Debtors assert that the claim for attorneys fees incurred prior to April 3, 2002, has been discharged. Therefore, they request an order precluding the Durr Claimants from prosecuting that claim in the California Action.

The Debtors argue that the use of the term "actual losses" in the Plan meant to include only actual damages. They cite the definition of loss in Black's Law Dictionary (6th ed.) which states that "[i]t signifies the act of losing or the thing lost; it is not a word of limited, hard and fast meaning and has been held synonymous with, or equivalent to, 'damage', 'damages', 'deprivation', 'detriment', 'injury', and 'privation'." [4] Even in common parlance, the Debtors argue damages and loss have been considered synonymous for many years. *See, e.g., In re City of Pittsburgh,* 243 Pa. 392, 90 A. 329, 331 (1914) ("These words 'damage,' 'loss,' 'injury' are used interchangeably, not simply in this particular statute, but generally; within legislative meaning and judicial interpretation they import the same thing. Our attention has not been called to a case where they have been distinguished in meaning."); *Weeks v. Inhabitants of the Town of Shirley,* 33 Me. 271 (1851) ("Damages means 'actual loss'. This is Webster's first definition of the word.").

The Durr Claimants assert that under California law attorneys fees are not punitive or exemplary damages. Rather, they argue that attorneys fees are actual losses that they suffer in prosecuting their action against the Debtors and that, therefore, the Plan and Confirmation Order do not preclude them from seeking attorneys fees which may be awarded under California law.[5]

Both the Debtors and the Durr Claimants rely upon *Marron v. Superior Court,* 108 Cal.App.4th 1049, 134 Cal.Rptr.2d 358 (Cal.Ct.App.2003) in support of their respective positions. The Debtors cite *Marron* for the proposition that "[s]tatutory attorneys fees are not of course intended to compensate the 'prevailing party' for damages suffered." *Id.* at 1066, 134 Cal. Rptr.2d 358 (quoting *Flannery v. Prentice,* 26 Cal.4th 572, 586, 110 Cal.Rptr.2d 809, 28 P.3d 860 (Cal.2001)). Thus, the Debtors assert that statutory attorneys fees such as those the Durr Claimants seek are not "actual losses."

The Durr Claimants cite the *Marron* and *Flannery* cases for the proposition that although attorneys fees are not damages, they are "actual losses." This is evident, they argue, from the actual holding of *Marron,* which held that attorneys fees are not considered *punitive* or *exemplary* damages "[b]ecause awards of statutory attorney fees generally are considered awards of costs and not damages." *Marron,* 108 Cal.App.4th at 1066, 134 Cal. Rptr.2d 358. Thus, the Durr Claimants argue that, rather than punitive or exemplary damages, statutory attorneys fees are "actual losses." This conclusion is supported they say by the *Flannery* decision which held that statutory attorneys fees cannot be awarded unless the litigant is actually obligated to pay them. 26 Cal.4th at 578–79, 110 Cal.Rptr.2d 809, 28 P.3d 860. If a litigant is actually obligated to

---

4. The most recent edition of Black's Law Dictionary does not contain this definition, however. *See* Black's Law Dictionary (8th ed.2004).

5. Under the California elder abuse statute, a prevailing plaintiff is entitled to recover its actual attorneys fees from the defendant. Cal. Welf. & Inst.Code § 15657.

pay the attorneys fees, the Durr Claimants assert, it is an out of pocket expense which must be considered an "actual loss." The Durr Claimants cite several other California cases in which attorneys fees are included as part of the litigant's actual losses. *See, e.g., Prentice v. North Am. Title Guar. Corp.,* 59 Cal.2d 618, 620, 30 Cal. Rptr. 821, 381 P.2d 645 (1963) ("A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonable necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred."); *Valentine v. Membrila Ins. Servs., Inc.,* 118 Cal.App.4th 462, 475–76, 13 Cal.Rptr.3d 125 (Cal.Ct.App.2004) (noting that "an award of damages that exceeds actual loss runs afoul of the basic principle that damages are awarded to compensate for loss incurred" before holding that "costs of defense are a clear loss"); *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,* 57 Cal.App.3d 104, 111–12, 128 Cal.Rptr. 901 (Cal.Ct.App.1976) (inclusion of attorneys fees in request for damages was properly pled in attorneys malpractice suit); *Forte v. Nolfi,* 25 Cal. App.3d 656, 688, 102 Cal.Rptr. 455 (Cal.Ct. App.1972) ("In this case the actual loss to plaintiffs could not exceed the sum of.$750, plus their attorney's fees[.]"); *Northwestern Title Security Co. v. Flack,* 6 Cal. App.3d 134, 140, 146, 85 Cal.Rptr. 693 (Cal.Ct.App.1970) (stating that damages "must be measured by the actual loss suffered" including attorneys fees and costs).

The Debtors respond that the cases cited by the Durr Claimants are distinguishable because they are not cases involving statutory attorneys fees but are cases involving an insured's claim of bad faith and unfair dealing against its insurer. In the latter case, they concede, the courts have held that attorneys fees are part of the economic loss suffered by the insured, but that principle does not extend to other situations.

■ We disagree with the Debtors' analysis. While the term loss may generally be viewed as synonymous with the word damages, that does not answer our inquiry here. The cases that conclude that attorneys fees are not part of an award of damages are usually premised on the American Rule that each party shall bear its own costs of litigation. *Roberts,* 57 Cal. App.3d at 112, 128 Cal.Rptr. 901. Where, however, by statute or decisional law, attorneys fees may be awarded to the prevailing party, we conclude that they are an actual loss. *Flannery,* 26 Cal.4th at 578–79, 110 Cal.Rptr.2d 809, 28 P.3d 860; *Roberts,* 57 Cal.App.3d at 112, 128 Cal.Rptr. 901. We, therefore, conclude that the Durr Claimants may seek post-petition statutory attorneys fees in the California Action. The Debtors' Motion will, therefore, be denied without prejudice to the parties' rights to argue the remaining issues before the California Court.

## IV.  CONCLUSION

For the reasons set forth herein, the Debtors' Emergency Motion to Enforce Joint Plan of Reorganization, Confirmation Order, and the Discharge Injunction will be denied.

An appropriate Order is attached.

### ORDER

AND NOW, this 22nd day of July, upon consideration of the Emergency Motion of the Reorganized Debtors to Enforce Joint Plan of Reorganization, Confirmation Order, and the Discharge Injunction and the Objection of the Durr Claimants thereto, it is hereby

**ORDERED** that the Motion is hereby **DENIED** to the extent that the Debtors

request an injunction barring the Durr Claimants from seeking statutory attorneys fees for the period after January 18, 2000; and it is further

**ORDERED** that the Debtors and the Durr Claimants are authorized and directed to request that the California Court determine whether the Durr Claimants may collect insurance proceeds on account of any of their punitive damages, claims for enhanced remedies, and/or attorneys fees that arose before the Confirmation Date (April 3, 2002); and it is further

**ORDERED** that in the event the California Court determines that the Durr Claimants may not recover pre-confirmation punitive damages, attorneys fees and/or enhanced remedies from any third party insurer, then the Durr Claimants shall cease and desist all actions to litigate or liquidate such claims.